Chris WHITE, et al., Plaintiffs,

v.

Angelo FOSCO, et al., Defendants.

No. 81–2500.

United States District Court,
District of Columbia.

Dec. 7, 1984.

William A. Dobrovir, Washington, D.C., for plaintiffs.

Thomas C. Green, Peter Van N. Lockwood, William H. Allen, Stephen M. Sacks, Ira M. Lechner, Frederick A. Douglas, Earl C. Dudley, Arthur D. Burger, F. Joseph Nealon, Washington, D.C., for defendants.

## MEMORANDUM ORDER

JOHN GARRETT PENN, District Judge.

This matter comes before the Court on a motion of defendants Connerton and Bernstein to dismiss certain allegations of the complaint for failure to state a claim upon

which relief can be granted[1]. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief". *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); *Phillips v. Bureau of Prisons*, 591 F.2d 966, 968 (D.C.Cir.1979). Applying this stringent test to the allegations of the complaint, the Court grants the motion to dismiss in part, and denies the motion in part.

## I

The facts which plaintiffs allege in support of their claims against Connerton and Bernstein are as follows[2]. In 1969, Messrs. Connerton and Bernstein undertook to represent members of the Mail Handlers Division of the Laborers International Union of North America ("LIUNA") in a class action suit (hereinafter "postal workers litigation") against the United States Postal Service ("USPS")[3]. Although Connerton and Bernstein were full-time salaried counsel to LIUNA at the time (General Counsel and Associate General Counsel respectively), they represented their LIUNA clients in this litigation privately rather than as LIUNA counsel[4]. Plaintiffs further allege that Connerton and Bernstein made use of LIUNA publica-

tions to solicit LIUNA class members for the lawsuit[5]. The suit was settled without a trial, and as part of the settlement Connerton and Bernstein were awarded attorneys' fees out of the class' recovery fund. The attorneys' fees were awarded to Connerton and Bernstein in their private capacity rather than in their capacity as union counsel[6].

## II

Plaintiffs allege that the aforementioned actions of Connerton and Bernstein constituted statutory and common law breach of fiduciary duty, conversion of union funds, and violations of several provisions of the Racketeer Influenced and Corrupt Organizations Act ("RICO")[7]. Specifically, plaintiffs allege that: (1) by bringing the suit in their private rather than in their union capacity, and by retaining the attorneys' fees, Connerton and Bernstein breached their fiduciary duty to LIUNA in violation of Section 501(a) of the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 501(a) ("Section 501(a)"), and the common law of trusts of the District of Columbia ("common law")[8]; (2) the use of LIUNA facilities and publications to solicit members for the postal workers litigation was an abuse of defendants' positions as LIUNA officers, employees, and attorneys

1. By order of this Court, filed January 3, 1983, defendant O'Sullivan was permitted to join in and adopt the portion of this motion which seeks dismissal of the RICO claims. *See infra* note 33.

2. *See generally* complaint at ¶¶ 23–25 and the pleadings to this motion. For purposes of this motion to dismiss the Court accepts the truth of the well-pleaded factual allegations of the complaint. *Miree v. DeKalb County*, 433 U.S. 25, 27 n. 2, 97 S.Ct. 2490, n. 2, 53 L.Ed.2d 557 (1977), and *Phillips v. Bureau of Prisons*, 591 F.2d 966, 969 (D.C.Cir.1979).

3. This suit, initially one of several suits which were consolidated, was brought by Connerton and Bernstein along with other attorneys. The suit sought recovery of back-pay for all qualified postal workers under the Federal Employees' Salary Comparability Act of 1965, 39 U.S.C. §§ 3571–73. *See* Plaintiffs' Opposition to Motion to Dismiss ("Opp.") at 12. The class con-

sisted of all qualified postal workers, not just LIUNA members. Opp. at 2. Indeed, whereas the entire Mail Handlers Division of LIUNA consisted at the time of only approximately 60,-000 postal employee members, Opp. at 2, the total number of potential class members was found by Judge Richey to approximate 800,000. *See United Federation of Postal Clerks v. United States, et al.*, 61 F.R.D. 13 (D.D.C.1973) (Richey, J.) at 16. It is not clear from the record how many postal worker members of the Mail Handlers Division in fact participated in the suit.

4. Complaint at ¶ 24.

5. *Id.*

6. *Id.* at ¶ 25, and *United Federation of Postal Clerks v. United States, supra* note 3, at 16, n. 7.

7. *See generally* complaint at ¶¶ 32–36.

8. *Id.* at 32–33, and Opp. at 5, 22.

in violation of Section 501(a) and the common law [9]; (3) the failure to turn over to the union the profits of the litigation (the attorneys' fees) was a conversion of union funds in violation of Section 501(c) of the LMRDA, 29 U.S.C. § 501(c) ("Section 501(c)"), and constituted racketeering activity in violation of Sections 1961(1) and 1962 of RICO, 18 U.S.C. §§ 1961(1), 1962 [10]; and (4) the failure to turn over to the union the profits of the litigation injured plaintiffs' business and property in violation of 18 U.S.C. § 1964(c) by depleting the union's treasury [11].

### III

Defendants Connerton and Bernstein seek to dismiss these claims on several grounds. With regard to the breach of fiduciary duty allegations [12], defendants assert that: (1) the claims are barred by collateral estoppel [13]; (2) the allegations fail to state a claim which can be maintained by the union [14]; (3) as a matter of law, union attorneys may handle cases in their private capacities and receive attorneys' fees [15]; (4) the allegations are barred by the statute of limitations and laches [16]; and (5) Mr. Bernstein was not subject to Section 501 at the time of the postal workers litigation and, therefore, is not liable under that section [17].

Defendants assert that the Section 501(c) claim is insufficient as a matter of law because (1) it fails to allege adequately fraudulent intent [18], and (2) the attorneys' fees never belonged to LIUNA and therefore were not "union funds" for purposes of Section 501(c) [19].

With regard to the RICO claims, defendants assert that since the predicate act, the 501(c) violation, is deficient as a matter of law, the RICO claims must fail as well [20]. They further assert that the complaint fails to allege several necessary elements of a RICO claim, *viz.*, that the union's affairs were conducted "through a pattern of racketeering" [21]; that there was a specific "racketeering enterprise injury" [22]; and that Connerton and Bernstein were connected to organized crime [23]. The Court will examine these allegations and defenses beginning with the Section 501(c) and RICO claims.

### IV

#### A. *Section 501(c) Claim*

Plaintiffs allege that the failure of Connerton and Bernstein to turn over to the union the profits (attorneys' fees) from the postal workers litigation constituted a conversion of union funds in violation of 29 U.S.C. § 501(c). Section 501(c) provides that

> [a]ny person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the moneys, funds, securities, property, or other assets of a labor organization of which he is an officer, or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

29 U.S.C. § 501(c). The key requirements of this provision for purposes of plaintiffs'

---

9. Complaint at ¶¶ 32–33.

10. *Id.* at ¶ 35(b), and Opp. at 32, 34.

11. Complaint at ¶ 36, and Opp. at 32.

12. *Id.* at ¶¶ 23–25.

13. *See* Memorandum of Points and Authorities in Support of Motion to Dismiss ("Defts. Mot.") at 5–11, and Defendants' Reply Memorandum ("Reply") at 11–13.

14. Defts. Mot. at 11–13, and Reply at 6–9.

15. Defts. Mot. at 13, and Reply at 9–11.

16. Defts. Mot. at 14–17, and Reply at 13–16.

17. Defts. Mot. at 17, and Reply at 16.

18. Defts. Mot. at 20–21, and Reply at 20–22.

19. Defts. Mot. at 20–21, and Reply at 18–19.

20. Defts. Mot. at 19–21, and Reply at 18–19.

21. Defts. Mot. at 22–25, and Reply at 23–24.

22. Defts. Mot. at 25–28, and Reply at 24.

23. Defts. Mot. at 28–31, and Reply at 25–27.

claim are: (1) that the converted funds belong to the union, and (2) that the conversion be done unlawfully and willfully. Neither requirement is met in this case.

1. *The attorneys' fees did not belong to LIUNA.*

 The record clearly shows that Connerton and Bernstein undertook the representation of the LIUNA members as private rather than as union attorneys; that the propriety of awarding attorneys' fees was raised, litigated, and decided in defendants' favor; that the attorneys' fees were specifically awarded to Connerton and Bernstein in their private rather than union capacities; and that no objection to the award or demand for an accounting was made by the union for eight years [24]. At least *prima facie* it would appear that the attorneys' fees belonged to Connerton and Bernstein, and not to the union.

Plaintiffs attempt to overcome these seemingly dispositive facts by asserting that the attorneys' fees were "constructively" the union's. Plaintiffs argue that: Connerton and Bernstein breached their fiduciary duty to the union by bringing the postal workers litigation in their private capacities, and by receiving attorneys' fees; when they breached their fiduciary duty to the union, the attorneys' fees immediately became subject to a constructive trust in favor of the union, and defendants had an immediate duty to account; the fees thus "belonged" to LIUNA as a matter of law; and defendants' failure to account and pay over was a conversion in violation of Section 501(c) [25].

Plaintiffs' theory is contrived and utterly without merit [26]. The breach of fiduciary duty and imposition of a constructive trust—both of which are prerequisites, under plaintiffs' theory, to a conclusion that the funds were "constructively" the union's —are hypothetical, merely theories at this time. No court has found such a breach or ordered such a remedy. In addition, under plaintiffs' theory the constructive trust is a *remedy* for the alleged breach of fiduciary duty. If the constructive trust makes the attorneys' fees the property of the union, it does so only for purposes of *remedying* the breach of fiduciary duty, not for establishing a subsequent violation. It would be illogical and manifestly unjust to use what is only a remedy as a predicate for a further violation (conversion) unless, after being on notice that the funds were subject to the constructive trust, the defendants still failed to account. But these are not the facts of this case. The Court agrees with the defendants that the attorneys' fees did not belong to the union for purposes of Section 501(c).

2. *The failure to turn over the attorneys' fees to the union was not willful conversion.*

 Even *arguendo* that the union should have been entitled to the attorneys' fees, and that the attorneys' fees belong to the union by operation of some sort of constructive trust, the Court could not find that the "defendants' failure to account and pay over was a [willful] conversion in violation of § 501(c)" as plaintiffs contend [27]. As already noted, the defendants were specifically awarded attorneys' fees in their private capacity rather than in their capacity as union counsel, and the union failed to object to the award *for eight years.* Under these facts, Connerton and Bernstein could have had no idea that the fees were not rightfully theirs, or that they were under a "duty" to pay over the fees to the union. Accordingly, they could not have possessed the requisite intent ("willfulness") for conversion under Section 501(c).

---

24. *See* complaint at ¶¶ 24, 25; *See also United Federation of Postal Clerks v. United States,* 61 F.R.D. 13 (D.D.C.1973) (Richey, Jr.). Judge Richey awarded the attorneys fees in 1973. The Complaint was not filed until 1981.

25. *See* Opp. at 32, 34, and complaint at ¶ 35.

26. The cases cited by plaintiffs, *see* Opp. at 34–35, do not support this theory.

27. Opp. at 34.

In conclusion, even under the stringent test of *Conley v. Gibson, supra*, plaintiffs can prove no set of facts which would make the attorneys' fees "funds of the union", or establish that defendants' failure to pay over the fees to the union was "willful conversion"[28]. The 501(c) claim is dismissed with prejudice.

### B. *RICO Claims*

█ Plaintiffs also allege violations of Sections 1962 and 1964(c) of RICO[29]. Section 1962 requires that there be "racketeering activity". Racketeering activity is defined in 18 U.S.C. § 1961(1) to include any act indictable under Section 501(c). Plaintiffs' pleadings state that Section 501(c) is the offense upon which the 1962 violation is predicated[30]. Since plaintiffs have failed to state a claim under Section 501(c), *see* discussion *supra*, their Section 1962 claim must fail as well. In a similar vein, 18 U.S.C. § 1964(c) requires that a person be injured "by reason of a violation of Section 1962". Since plaintiffs have failed to establish their Section 1962 claim, their Section 1964(c) claim is also legally insufficient.

Defendants also contend that the plaintiffs have not alleged a distinct "RICO-type injury", but only injury from the predicate acts. Defendants argue that to maintain a civil cause of action under RICO, plaintiffs must allege and prove not merely the same injury as that caused by the predicate acts, but a separate and distinct injury resulting from a violation of the RICO statute itself.

Whether the RICO statute requires a plaintiff to plead a specific "RICO injury" (or "racketeering enterprise injury" as it has sometimes been termed) is an issue subject to much debate and disagreement.

This Circuit has not had an opportunity to rule on the question, but a large number of other district and circuit courts have addressed the issue. In the United States District Court for the District of Columbia there are five decisions which address the issue: *Slattery v. Costello*, 586 F.Supp. 162, 165–67 (D.D.C.1983); *Guerrero v. Katzen*, 571 F.Supp. 714, 718–21 (D.D.C.1983); *Cross v. Price Waterhouse & Co.*, [1982–83] Fed.Sec.L.Rep. (CCH) ¶ 99,153, at n. 4 (D.D.C.1982); *Bayly Corp. v. Marantette*, [1982] Fed.Sec.L.Rep. (CCH) ¶ 98,834, at 94,291 (D.D.C.1982); *Charing Cross Inc. v. The Riggs National Bank*, slip op. No. 82–1116 at 9–14 (D.D.C. Oct. 7, 1983). Three of the decisions (*Guerrero, Charing Cross* and *Bayly*) embrace the "RICO-type" or "racketeering" injury requirement while two (*Slattery* and *Charing Cross*) reject it.

The most recent word on the subject has come from the Second Circuit where the rule is now firmly established that a private plaintiff suing under the civil RICO provisions must allege a "racketeering" or "RICO-type" injury. In *Sedima, S.P.R.L. v. Imrex Co.*, 741 F.2d 482 at 494–96 (2d Cir.1984), Judge Oakes, writing for the Circuit, stated that a plaintiff must "show injury different in kind from that occurring as a result of the predicate acts themselves, or not simply caused by the predicate acts, but also caused by an activity which RICO was designed to deter". *Id.* at 496. *Accord Bankers Trust Co. v. Rhoades*, 741 F.2d 511 at 518 (2d Cir.1984); *But see Furman v. Cirrito*, [current] Fed. Sec.L.Rep. CCH, ¶ 91,663 (2d Cir.1984).

█ After considering the case law, the statute itself, the scant legislative history

---

**28.** In addition, plaintiffs' failure to raise this claim for eight years would very possibly give rise to a statute of limitations (three years in the District of Columbia) or laches defense. Under plaintiffs' theory, the defendants' failure to pay over and account is the basis for the 501(c) violation (which in turn is the basis for the RICO violations). However, as discussed above, defendants could have had no idea of any alleged duty to account. Had the plaintiffs made a demand for an accounting sooner, defendants

would have been in a position to account and under plaintiffs' theory, to avoid the alleged 501(c) violation. Thus, plaintiffs' eight year delay may have prejudiced the defendants.

**29.** Plaintiffs also allege a violation of 18 U.S.C. § 1961(1). This section, however, is merely definitional.

**30.** *See* Opp. at 32.

on point, and the growing literature on the issue, this Court concludes that a plaintiff suing under civil RICO must allege a distinct RICO-type of injury, i.e., an injury caused by a violation of Section 1962, and not merely an injury caused by the predicate acts. The Court agrees with the Second Circuit and the three decisions of this court that the "by reason of a violation of section 1962" language of Section 1964(c) imposes this requirement.

■ It is clear from plaintiffs' pleadings that they have failed to allege an injury separate and distinct from that caused by the predicate acts. For this additional reason [31] plaintiffs' RICO allegations are insufficient as a matter of law and must be dismissed [32, 33].

### C. *Breach of Fiduciary Duty Claims*

Defendants make several arguments in support of their motion to dismiss the breach of fiduciary duty allegations. After careful review, the Court concludes that these arguments are either without merit or are insufficient to warrant dismissal at this time.

Defendants first argue that the propriety of the attorneys' fees award was considered and determined in their favor by the court in the postal workers litigation [34]. Therefore, they argue, collateral estoppel bars the breach of fiduciary duty claims.

■ Defendants' argument is without merit. For collateral estoppel to apply, the issues on which preclusion is sought must have been actually and necessarily determined in a prior action, *Montana v. United*

*States*, 440 U.S. 147, 153, 99 S.Ct. 970, 973, 59 L.Ed.2d 210 (1979), and the issues in both actions must be the same, *McCord v. Bailey*, 636 F.2d 606, 608–09 (D.C.Cir.1980) and *Donovan v. Postal Service*, 530 F.Supp. 872, 898 (D.D.C.1981) (FLSA litigation). *See also* Restatement (Second) of Judgments § 27 (1980).

■ The breach of fiduciary duty issues raised by the plaintiffs in this action are whether it was a breach of fiduciary duty for Connerton and Bernstein to represent LIUNA members as private rather than as union counsel; to use LIUNA facilities to solicit individual LIUNA members for a private law suit; and to receive attorneys' fees. These issues were not considered or determined in the postal workers litigation. While the court in that action did consider whether Connerton and Bernstein should be awarded attorneys' fees, the issue was not framed in terms of whether such an award would amount to a breach of fiduciary duty. More importantly, the court in the postal workers litigation did not consider at all the issues of whether using LIUNA facilities to solicit clients or bringing the action privately constituted a breach of fiduciary duty. Because the issues raised in this action were not considered in the postal workers litigation, the doctrine of collateral estoppel is inapplicable.

Defendants next argue that the allegations fail to state a claim which may be maintained by the union [35]. Defendants' argument is that (1) even if they received the attorneys' fees improperly, the union would not be entitled to the fees and there-

---

**31.** In addition, since plaintiffs waited eight years to bring the RICO claims, these claims are probably time-barred. These RICO provisions do not specify a limitations period. Since the relief sought under RICO is legal and not equitable, *see* Opp. at 22, the Court must apply the analogous local statute of limitations. *See Saffron v. Department of Navy*, 561 F.2d 938, 941 (D.C.Cir.1977) and *Ingram v. J. Ray McDermott & Co., Inc.*, 495 F.Supp. 1321, 1324 n. 4 (E.D.La. 1980). The applicable statute of limitations period under D.C.Code § 12–301 is three years.

**32.** Defendants have sought dismissal of the RICO counts on the additional grounds that the

complaint fails to allege a "pattern of racketeering", or a connection between the defendants and organized crime. The Court need not address these questions.

**33.** The Court also dismisses the RICO claims against defendant O'Sullivan, but only on the ground that the complaint does not allege a specific "RICO-type" injury. *See supra* note 1.

**34.** Defts. Mot. at 5–11, and Reply at 11–13.

**35.** Defts. Mot. at 11–13, and Reply at 6–9.

fore has not been injured [36], and (2) since the union is not entitled to the fees and has not suffered any injury, the allegations fail to state a claim which may be maintained by the union.

■ Defendants' argument ignores the fact that there are other breach of fiduciary duty allegations. The complaint also alleges that defendants should have brought the postal workers litigation as union attorneys, and that they should not have used LIUNA facilities to solicit clients for a private law suit. Both of these allegations assert injuries which may be maintained by the union under § 501(a).

■ Defendants' third argument is that as a matter of law union attorneys may handle cases in their private capacities and receive attorneys' fees [37]. This will not always be true. Whether union counsel may represent some members of a union privately depends on the conditions, both explicit and implicit, of his or her office and employment, and provisions in the constitution or by-laws of the union, and any other understandings or arrangements which may exist. The union has the power, through contract, constitution, and by-laws to dictate the extent to which union counsel may engage in non-union matters.

■ Plaintiffs have cited from a provision of the LIUNA constitution, purportedly in effect at the time the law suit was commenced, which states that "[t]he General Counsel shall devote all his time exclusively to the affairs and welfare of the International Union" [38]. While the Court is unable at this time to determine the full meaning and scope of this provision, or to know what other understandings there were between the union and counsel in this regard, the quoted provision is sufficient for purposes of a motion to dismiss to rebut the argument that union counsel may, as a matter of law, represent union members privately.

■ Defendants' fourth argument [39] is that plaintiffs' 501(a) claim is barred by laches and/or the statute of limitations [40]. As a threshold matter the Court must determine whether the statute of limitations or laches applies [41]. The weight of authority suggests that a 501(a) breach of fiduciary duty claim is governed by laches. *See Note,* 73 Yale L.J. 443, 466 n. 114 (1964); *Morrissey v. Curran,* 482 F.Supp. 31, 40 (S.D.N.Y.1979); *Yablonski v. Mine Workers,* 68 Lab.Cas. ¶ 12,810, 24,615 (D.D.C. 1972); *Weaver v. Mine Workers,* 68 Lab. Cas. ¶ 12,700, 24,287 n. 6 (D.D.C.1972); *Blankenship v. Boyle,* 329 F.Supp. 1089, 1112 (D.D.C.1971) [42].

The defense of laches requires a finding that the plaintiff inexcusably or unreasonably delayed in bringing the claim, and that the delay was prejudicial to the defendant. *Rozen v. District of Columbia,* 702 F.2d 1202 (D.C.Cir.1983). Although the eight year delay would seem to be unreasonable especially in light of the fact that the postal workers litigation giving rise to the claim was a matter of public record, there has not been sufficient proof on either this point or on the issue of prejudice. Accordingly, the Court declines to dismiss the claim on the grounds of laches at this time.

■ Finally, defendants argue that Mr. Bernstein, Associate General Counsel of LIUNA at the time of the postal workers

**36.** Defendants argue that (a) if anyone else is entitled to the attorneys' fees, it is the individual class members out of whose recovery fund the attorneys' fees were awarded; and (b) as a matter of law, the union could not have been awarded the attorneys' fees.

**37.** Defts. Mot. at 13, and Reply at 9–11.

**38.** Opp. at 7.

**39.** Defts. Mot. at 14–17, and Reply at 13–16.

**40.** The application of the statute of limitations and laches to the 501(c) and RICO claims is discussed briefly at notes 28 and 31 *supra.*

**41.** The common law breach of fiduciary duty claim is equitable in nature. Accordingly, laches applies.

**42.** Two cases have, however, used the applicable statute of limitations (three years in this case) *as a guide. See Corley v. Hecht,* 530 F.Supp. 1155, 1159 (D.D.C.1982), and *Blankenship v. Boyle,* 329 F.Supp. at 1112.

litigation, was not an "officer, agent, shop steward, or other representative" for purposes of Section 501(a) [43]. Rather, they argue, Mr. Bernstein was part of the union's "salaried nonsupervisory professional staff", a category of persons specifically exempt from the reach of Section 501(a). 29 U.S.C. § 402.

Without evidence regarding the specific duties, responsibilities, and terms of Bernstein's position, the Court is unable to determine whether Mr. Bernstein's position was within the purview of Section 501(a). Accordingly, the Court declines to dismiss this claim at this time.

### V

For the foregoing reasons, the Court grants the motion to dismiss the 501(c) and RICO counts against defendants Connerton and Bernstein, but declines to dismiss the breach of fiduciary duty claims at this time.

SO ORDERED.

---

**43.** Defts. Mot. at 17, and Reply at 16.