794 F.2d 1217
 123 L.R.R.M. (BNA) 2796, 105 Lab.Cas. P 11,987
 TRUSTEES OF the OPERATIVE PLASTERERS' AND CEMENT MASONS'
LOCAL UNION OFFICERS AND EMPLOYEES PENSION FUND,
Plaintiffs-Appellees,
v.
JOURNEYMEN PLASTERERS' PROTECTIVE AND BENEVOLENT SOCIETY,
LOCAL UNION NO. 5, Defendant-Appellant.
 No. 85-1668.
 United States Court of Appeals,
Seventh Circuit.
 Argued Oct. 30, 1985.
Decided July 1, 1986.
 
 Martin J. Burns, Jacobs, Burns, Sugarman & Orlove, Chicago, Ill., for defendant-appellant.
 Sally M. Armstrong, O'Donoghue & O'Donoghue, Washington, D.C., for plaintiffs-appellees.
 Before COFFEY and RIPPLE, Circuit Judges, and CAMPBELL, Senior District Judge.*
 RIPPLE, Circuit Judge.
 
 
 1
 This is an action brought by the appellees, Trustees of the Operative Plasterers' and Cement Masons' Local Union Officers and Employees Pension Fund (Trustees), against the Journeymen Plasterers' Protective and Benevolent Society, Local Union No. 5 (Local 5) to compel contributions to a pension fund. Local 5 defended by claiming that the pension fund was illegal as violative of section 501 of the Labor Management Reporting and Disclosure Act (LMRDA or Landrum-Griffin), 29 U.S.C. Sec. 501.[1] Specifically, Local 5 alleged that a breach of fiduciary duty occurred when the pension plan, which would benefit some of the delegates, was adopted at the international union's convention. Also, Local 5 contended that the plan was adopted in a manner which contravened portions of the international union's constitution. On cross-motions for summary judgment, the district court found for the Trustees. First, the district judge held that section 501 applied only "to the relationship between union officers and their locals, not the interest of delegates to convention voting on pleniary [sic] issues such as the creation of a pension fund for all officers and employees of the union." Trustees of the Operative Plasterers' and Cement Masons' Local Union Officers and Employees Pension Fund v. Journeymen Plasterers' Protective and Benevolent Society, Decision at 2 (N.D.Ill. Oct. 17, 1984). Second, the district judge held that section 501 should only be applicable "in the event of waste or fraud." Id. Finally, he held that section 501 could not apply to violations of an international union's constitution. Id. at 3. Although we decline to adopt the reasoning of the district court, we affirm its judgment.
 
 
 2
 * Almost fifteen years ago, in August 1971, the Operative Plasterers' and Cement Masons' International Association (International) held its forty-second convention. Local 5, a Chicago-area affiliate of the International, had delegates in attendance. At the convention, the delegates adopted Resolution 206 (R. 206)--a provision which established a pension plan for full-time salaried officers and employees of the local unions. This resolution further provided that "all Local Unions shall contribute a uniform percentage up to but not in excess of ten (10%) percent of the salaries of such officers and employees to support and to finance this pension plan." R. 21, Ex. C at 6; Appellant's App. at 11a. The plan was organized and placed under the auspices of the Trustees.
 
 
 3
 According to Local 5, its members had opposed the pension plan from its inception. Part of this opposition stemmed from the fact that Local 5's officers and employees already participated in a distinct, industry-wide pension plan. Local 5 took the position that the International, by forcing it to contribute to the R. 206 plan, made the local pay for benefits which it did not require. Therefore, to avoid paying for excess benefits, Local 5 refused to contribute to the plan.
 
 
 4
 On September 23, 1983, the Trustees filed the present action to enforce Local 5's obligations under the pension plan. Jurisdiction was premised on section 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, and section 502 of the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1132. In the district court, Local 5 admitted that it had never tendered contributions to the pension fund. Yet, it defended its nonpayment by arguing that the pension plan was illegal inasmuch as it was established in violation of section 501 of the LMRDA. Specifically, Local 5 argued that section 159 of the International's constitution (allegedly prohibiting members from voting in an election in which they have a personal interest) and section 141 (allegedly requiring local union ratification of all actions affecting that local) were violated at the 1971 convention.[2]
 
 II
 
 5
 As noted above, the district judge, in granting summary judgment, held that section 501 applied only to the relationship between union officers and their locals, not to the interests of delegates to a convention voting on plenary issues. Furthermore, he held that section 501 was only applicable in the event of waste or fraud. Alternatively, he held that section 501 did not apply to violations of an international union's constitution.
 
 
 6
 We are unprepared on this record to address the sweeping propositions of law asserted without citation by the district judge. The proper scope of section 501 is not an issue susceptible to easy judicial resolution. Indeed, from the very earliest days of the LMRDA, it has been recognized that the precise contours of section 501 are difficult to delineate. Definitive interpretation of such an ambiguous provision must be undertaken with great caution even on the best of records.
 
 
 7
 The district court failed to exercise the appropriate caution in several respects. First, it failed to deal with several important threshold matters. For instance, in this litigation, the section is not raised offensively but by way of defense in a breach of contract action. The Supreme Court has held that illegality may be raised as a defense to a labor contract action under section 301. Kaiser Steel Corp. v. Mullins, 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). However, unlike the situation in the present case, the contract in Kaiser was alleged to be intrinsically illegal as violative of the antitrust laws and section 8(a) of the National Labor Relations Act. Here, neither the parties nor the district court addressed the issue of whether the rule of Kaiser ought to apply to a situation such as the present one in which the contract is not intrinsically illegal and, at most, is the product of an internal decision-making process which breached a pre-existing fiduciary obligation.
 
 
 8
 The district court also did not consider whether the alleged section 501 breach was barred by the doctrine of laches. A common law claim for breach of a fiduciary duty is equitable in nature and, therefore, subject to the doctrine of laches. In similar fashion, the "weight of authority suggests that a Sec. 501(a) breach of fiduciary duty claim is governed by laches." White v. Fosco, 599 F.Supp. 710, 717 (D.D.C.1984); Morrissey v. Curran, 482 F.Supp. 31, 40 (S.D.N.Y.1979). In this case, Local 5 waited until the inception of this litigation--over twelve years after the allegedly improper vote--to bring its claim to court. Yet, the district court failed to address whether Local 5 had inexcusably or unreasonably delayed in bringing its action, White, 599 F.Supp. at 717, or whether the delay was prejudicial to the opposing party. Id.
 
 
 9
 Under other circumstances, it might be appropriate to remand this case to the district court for consideration of these threshold issues. However, that court also failed to deal with a more fundamental aspect of Local 5's case. Addressing this question now will terminate this litigation at this point and thus spare the litigants and the district court the time and expense of further proceedings.[3]
 
 
 10
 In attempting to delineate the contours of section 501, various circuits have taken approaches which are somewhat difficult to reconcile. For some, the breach of fiduciary duty proscribed by the section occurs only when that breach is grounded in an alleged misappropriation of money or property. See Gurton v. Arons, 339 F.2d 371 (2d Cir.1964).[4] Under this view, section 501 could not be used to attack the manner in which a union resolution was adopted. See Coleman v. Brotherhood of Railway and Steamship Clerks, 340 F.2d 206 (2d Cir.1965). Other courts have taken a far more expansive view of the scope of section 501 and have viewed it as a weapon to correct abuses in the union's internal process of governance. See Pignotti v. Local # 3 Sheet Metal Workers' International Association, 477 F.2d 825 (8th Cir.1973).[5] To date, this circuit has not described, except in the most tentative and fact-specific way, the contours of this section. In Lux v. Blackman, 546 F.2d 713, 718 (7th Cir.1976), while specifically noting that it was not necessary to describe the "full reach" of the section, we seemingly adopted the Gurton approach and held that section 501 was not available to redress claims that the appellants were improperly removed from office. On the other hand, in Hood v. Journeyman Barbers, 454 F.2d 1347, 1353 (7th Cir.1972), we recognized that the legislative history relied upon by the Pignotti court was more accurate than that utilized by the Gurton court.[6]
 
 
 11
 Even if this circuit were to adopt a broad view of section 501, Local 5 could not prevail on its present claim. The Landrum-Griffin Act was designed "[t]o expose conflicts of interest and stamp out embezzlement and self-dealing by union officials," McNamara v. Johnston, 522 F.2d 1157, 1163 (7th Cir.1975). The primary target of the Act's fiduciary duty provision (section 501) was not the union convention but rather the union official charged with the management of the memberships' assets. See Cox, Internal Affairs of Labor Unions Under the Labor Reform Act of 1959, 58 Mich.L.Rev. 819 (1960). While we do not preclude the possibility of the section's application in the convention context,[7] it is clear that such an application must take into account the unique function of the international convention in the internal governance of the organization. Certainly where, as here, the complaining party did not reasonably raise and pursue the alleged procedural irregularity within the parliamentary structure of the union, it should not find an alternate forum in the federal courts when it is called upon to honor an obligation to which it has already acquiesced by its conduct.
 
 
 12
 At no time during the 1971 convention did any delegate--including those of Local 5--make an effort to object to the participation of local union officers or those who had reasonable expectations of holding such office from participating in the vote on the pension plan. Nor, in any subsequent convention--during the twelve years that passed between the plan's adoption and the International's 1984 convention--did any delegate (presumably elected with full knowledge of the 1971 proceedings), from Local 5 or elsewhere, attempt to rescind the plan on the ground that it was the product of an illegal vote. While subsequent conventions, at the suggestion of Local 5 and others, considered modifications and termination of the pension plan, they did not consider its revocation on the ground of illegality.
 
 
 13
 Since Local 5 did not attempt to utilize the International's internal political machinery--either at the time of the vote or during the ensuing twelve years--we hold that Local 5 is precluded from filing an action under section 501 to challenge a disputed convention vote. Therefore, we affirm the judgment of the district court.[8]
 
 
 
 *
 The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation
 
 
 [1]
 Section 501 of the Labor Management Reporting and Disclosure Act, 29 U.S.C. Sec. 501, provides in pertinent part:
 (a) Duties of officers; exculpatory provisions and resolutions void
 The officers, agents, shop stewards, and other representatives of a labor organization occupy positions of trust in relation to such organization and its members as a group. It is, therefore, the duty of each such person, taking into account the special problems and functions of a labor organization, to hold its money and property solely for the benefit of the organization and its members and to manage, invest, and expend the same in accordance with its constitution and bylaws and any resolutions of the governing bodies adopted thereunder, to refrain from dealing with such organization as an adverse party or in behalf of an adverse party in any matter connected with his duties and from holding or acquiring any pecuniary or personal interest which conflicts with the interests of such organization, and to account to the organization for any profit received by him in whatever capacity in connection with transactions conducted by him or under his direction on behalf of the organization. A general exculpatory provision in the constitution and bylaws of such a labor organization or a general exculpatory resolution of a governing body purporting to relieve any such person of liability for breach of the duties declared by this section shall be void as against public policy.
 
 
 [2]
 Local 5 also argues that the pension plan itself is unreasonable and, therefore, violative of the general fiduciary duty imposed by the LMRDA. However, this claim is entirely without merit. There have never been any allegations that a pension plan is an improper form of compensation for the officers and employees of local unions. More importantly, Local 5 has never alleged that this particular pension plan is overgenerous because it affords unreasonably high payments to plan participants. Absent these types of allegations, we refuse to entertain a claim that the pension plan itself violates Sec. 501's general fiduciary duty. As the Second Circuit has aptly stated, "[t]he fiduciary standards for union officers impose liability upon them when they approve their receipt of excessive benefits, significantly above a fair range of reasonableness." Morrissey v. Curran, 650 F.2d 1267, 1275 (2d Cir.1981) (emphasis added). Since this is a case concerning employee compensation, and since Local 5 has made no allegation that the pension plan provides "excessive benefits," a Sec. 501 claim will not stand
 
 
 [3]
 The court may affirm a judgment on any ground supported by the record below. See Pfeil v. Rogers, 757 F.2d 850, 866 (7th Cir.1985)
 
 
 [4]
 In Gurton v. Arons, 339 F.2d 371 (2d Cir.1964), the Second Circuit stated:
 A simple reading of ... [LMRDA Sec. 501] shows that it applies to fiduciary responsibility with respect to the money and property of the union and that it is not a catch-all provision under which union officials can be sued on any ground of misconduct with which the plaintiffs choose to charge them.
 Id. at 375 (footnote omitted).
 
 
 [5]
 In Pignotti v. Local # 3 Sheet Metal Workers' Int'l Ass'n, 477 F.2d 825 (8th Cir.1973), the court criticized Gurton for its improper reading of Sec. 501's legislative history. The Gurton position was based on the remarks of Senators McClellan and Ervin. Pignotti, 477 F.2d at 833. Yet, the Senate's version of the bill--the provision which Senators McClellan and Ervin were discussing--was never enacted into law. See id. at 833-34. Rather, noted the Pignotti court, the present Sec. 501 came from a broader fiduciary provision introduced in the House of Representatives. Id. Relying on the broad language of this provision, the Pignotti court allowed Sec. 501 to be used as a weapon to correct abuses in a union's democratic processes
 
 
 [6]
 In Hood v. Journeyman Barbers, 454 F.2d 1347 (7th Cir.1972), we recognized, along with the Pignotti court, that it is necessary to refer to the House debates in interpreting Sec. 501
 
 
 [7]
 For instance, Local 5 makes no attempt in this case to argue that the convention was "rigged" in the sense that its delegates were subject to bribery or other similarly improper influences. Nor is there an allegation that a delegate, to the 1971 convention or any other convention, breached a specific mandate of his local union's membership by voting for the plan
 
 
 [8]
 Local 5 further argues that, assuming its Sec. 501 defense is not available, its liability is limited by the District of Columbia's three-year statute of limitations for actions premised on written contracts. We disagree
 As previously mentioned, the Trustees brought this action pursuant to Sec. 301 of the Labor Management Relations Act, 29 U.S.C. Sec. 185, and Sec. 502 of the Employee Retirement Income Security Act, 29 U.S.C. Sec. 1132. Since neither provision contains a statute of limitations, the Supreme Court, in UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966), held that "the timeliness of a Sec. 301 suit, such as the present one, is to be determined, as a matter of federal law, by reference to the appropriate state statute of limitations." Id. at 704-05, 86 S.Ct. at 1112-13 (footnote omitted). In applying the Illinois ten-year limitations period for written contracts, we believe that the district court acted in conformity with Hoosier Cardinal.
 Additionally, we note that the pension plan's choice of law provision, which indicates that the District of Columbia's substantive law is to be used in construing the plan, is irrelevant when considering which statute of limitation is to be used by the district court. See Federal Deposit Ins. Corp. v. Petersen, 770 F.2d 141, 142-43 (10th Cir.1985).